WAGNER CHOI & VERBRUGGE
Attorneys at Law

JAMES A. WAGNER
CHUCK C. CHOI
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: jwagner@hibklaw.com
Email: cchoi@hibklaw.com

Attorneys for Debtor
and Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>POMARE, LTD.<br>dba Hilo Hattie ,<br><br>        Debtor and<br>        Debtor-in-possession | Case No. 08-01448<br>(Chapter 11)<br><br>Confirmation Hearing<br><br>Date:    September 14, 2009<br>Time:    10:30 a.m.<br>Judge:  Hon. Robert J. Faris |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION DATED JULY 31, 2009

The hearing on confirming ("Confirmation Hearing") of the

Debtor's Plan of Reorganization Dated July 31, 2009 ("Plan"), commenced on

September 14, 2009, at 10:30 a.m., before the Honorable Robert J. Faris, United

States Bankruptcy Judge for the District of Hawaii. Appearances were as noted in

the record. Having considered all of the pleadings filed in support of confirmation, and there being no objections to Confirmation of the Plan, and based on the record in these cases, the arguments and representations of counsel and the Declarations of Donald B.S. Kang, Mark Storfer, and Craig Bingham filed in support of Confirmation of the Plan, and good cause appearing, the court now makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1.      Pomare, Ltd. ("Pomare") is the debtor and debtor-in-possession in chapter 11 case no. 08-01448 which was commenced by the filing of a voluntary petition on October 2, 2008.

2.      On October 9, 2008, the UST appointed a nine-member Committee consisting of Maui Divers, Royal Hawaiian Creations, Paul deVille, Kenneth Uemura, Island Import Co., Inc., Hagadone Hawaii, Inc., Trade West, Inc., The Madden Corp., and Lena Young. Paul deVille, Kenneth Uemura and Lena Young are former employees of the Debtor. Maui Divers, Royal Hawaiian Creations, and Madden Corp. subsequently resigned from the Committee.

### Approval of the Disclosure Statement, Solicitation: Confirmation Hearing

3.      On August 4, 2009, the Bankruptcy Court entered that certain Order Approving Debtor's Motion for Order Approving Disclosure Statement for Plan of Reorganization Dated July 31, 2009, Balloting Procedures and Scheduling

U.S. Bankruptcy Court - Hawaii  #08-01448  Dkt # 603  Filed  10/02/09  Page 2 of 23

Deadlines ("Solicitation Order") that, among other things, (a) approved the Disclosure Statement pursuant to Bankruptcy Code § 1125 and Federal Rule of Bankruptcy Procedure ("Rule") 3017, (b) established September 14, 2009, as the date for the Confirmation Hearing, (c) approved the form and method of notice of the confirmation hearing ("Confirmation Hearing Notice), (d) established procedures for soliciting and tabulating votes with respect to the Plan, and (e) established procedures governing the Confirmation Hearing.

4.  In accordance with the Solicitation Order, the following items were transmitted: (a) the Disclosure Statement, (b) the Confirmation Hearing Notice (as defined in the Solicitation Order), and (c) with respect to those creditors in classes entitled to vote under the Plan and the Solicitation Order, a Ballot (as fined in the Solicitation Order). All of said documents were transmitted to the appropriate parties on or before August 14, 2009. Such service is adequate and proper as provided by Bankruptcy Rule 3017(d), and no other or further notice is or shall be required.

5.  On August 27, 2008, Pomare caused to be filed the Plan Supplement with respect to the Plan, which was further amended on September 11, 2009.

6.  On September 9, 2009, Pomare filed the Declaration of Chuck Choi relating to Voting Tabulation, attesting and certifying the method and results

3

of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Plan ("Ballot Tabulation"). Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order.

7.     Pomare filed memoranda and declarations in support of Confirmation and supporting documents (collectively, "Confirmation Evidence") as reflected in this Court's docket.

8.     This Bankruptcy Court takes judicial notice of the docket of the Case maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Cases.

9.     The Debtor has the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of evidence, and has done so as set forth herein.

### Efforts to Sell the Debtor's Assets

10.     The Debtor now operates seven retail outlets in Hawaii (the Nimitz Property store, the Ala Moana Store, the Kihei Store, the Lihue Store, the Lahaina Store, the Kona Store and the Hilo Store) with approximately 170 employees.

4

11.     On June 26, 2009, the Debtor filed its motion to assume its interest as lessee for the six retail stores (the lease for the Nimitz Property having been assumed) and the parking lot for the Lihue Store. The Debtor's motion was granted at a hearing on August 19, 2009, subject to the confirmation of the Debtor's Plan.

12.     While the case was pending, the Committee actively sought to find a buyer for the Debtor's assets. The Debtor understands that the Committee received two written offers for the Debtor's assets. The first offer was made to the Committee by Kona Mountain Coffee in February, 2009, seeking to purchase substantially all of the Debtor's assets for $250,000 in cash plus deferred payments of up to $950,000. To the best of the Debtor's knowledge, Kona Mountain Coffee is no longer interested in acquiring the Debtor's assets.

13.     On May 19, 2009, the Committee filed its Motion for Order Authorizing and Confirming (I) Sale of Debtor's Personal Property Free and Clear of Liens, Pursuant to 11 U.S.C. § 363; and (II) the Assumption and Assignment of Leases and Executory Contracts Pursuant to 11 U.S.C. § 365 (the "Sale Motion") seeking to compel the Debtor to sell substantially all of its assets to Maui Divers for $1 million.

14.     The Debtor's principal objection to the sale was based on the fact that the proposed purchase price was not sufficient to satisfy approximately

5

$3.5 million in accrued administrative and secured claims. The hearing on the Sale Motion was scheduled for June 22, 2009.

15. On June 19, 2009, all of the Debtor's outstanding stock was transferred by TOC to Donald B.S. Kang, the owner of Royal Hawaiian Creations. At the same time, Mr. Kang obtained an assignment of NTP's rights under the Final DIP Order and related documents. Ted Nelson and John Scott resigned as CEO and President of the Debtor respectively, and Mr. Kang assumed the duties of CEO and President for the Debtor. In addition, Mark Storfer, the Secretary and Treasurer of the Debtor, was named Chief Operating Officer and Executive Vice President of the Debtor.

16. At the June 22, 2009 hearing on the Sale Motion, the Debtor requested a brief adjournment of the matter.

17. At the further hearing held on June 29, 2009, the Committee argued that the transfer of the Debtor's stock to Mr. Kang violated the Bankruptcy Code and was void. However, the Bankruptcy Court found that the transfer of stock by TOC to Mr. Kang did not violate the Bankruptcy Code.

18. On July 3, 2009, the Debtor and Maui Divers reached agreement on the terms of a new concession. On July 6, 2009, Maui Divers exercised its right to terminate the proposed acquisition of the Debtor's assets pursuant to the Sale Motion and requested the return of a $50,000 deposit from the Committee.

6

19.     On July 7, 2009, the Debtor filed its Motion for Order Authorizing Debtor to Reject Former Concession Agreement and Enter into New Concession Agreement With Maui Divers of Hawaii, Ltd., seeking an order authorizing the rejection of the Debtor's interest under the [old] Concession Agreement, allowance of a general unsecured claim in the amount of $1.25 million to Maui Divers arising out of the rejection of the Concession Agreement, to the extent necessary, approval of a new Concession Agreement dated July 6, 2009 (the "New Concession") with Maui Divers.

20.     On July 15, 2009, the Court granted the Debtor's motion to reject the Old Concession Agreement and to approve the New Concession Agreement. At the same hearing, the Committee withdrew its Sale Motion and also withdrew a motion it had filed to have the Debtor assume and assign its leases to Maui Divers as part of its Sale Motion.

21.     The Debtor estimates that its Administrative Claims that will have to be paid upon the Effective Date are approximately $1,050,000. An additional amount of Administrative Claims in the amount of approximately $2,000,000 will be paid over time post-emergence in accordance with the Plan and/or agreements with the respective creditors.

22.     The additional capital necessary to emerge from Chapter 11 will be provided by advances from Donald B.S. Kang under the DIP Loan of up to

U.S. Bankruptcy Court - Hawaii   #08-01448   Dkt # 603   Filed  10/02/09   Page 7 of 23

$1,000,000 which will be converted to equity on the Effective Date. Additionally, the Debtor will receive an additional $2 million in working capital on the Effective Date from Mr. Kang as a capital contribution and not as a loan. Based on the Debtor's projections attached to the Disclosure Statement as Exhibit "C," these additional contributions to capital will allow the Debtor to pay its outstanding Administrative Claims upon emergence, pursuant to the terms of the Plan and will provide adequate working capital for the Debtor going forward.

## Bankruptcy Code Requirements For Confirmation and Classification

23.     In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates 10 Classes of Claims and one Class of Interests. Each Class 4 and Class 5 Claim shall be deemed to be separately classified in a subclass of Class 4 or Class 5 and shall have all rights associated with separate classification under the Bankruptcy Code. The Claims and Interests placed in each Class (or subclass, as applicable) are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various classes of claims and Interests created under the Plan.

24.     The Plan specifies that Classes 1, 2, 4A, 4B, 5A, 5B, 5C, and 7 are not impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy code. Said Classes are deemed to have accepted the Plan because they

8

are not impaired under the Plan.

25.     The Plan designates that Classes 3, 6, 8, and 9 are impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

26.     Class 10 is deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(e), because said Class is not receiving or retaining any property under the Plan.  The interest of the existing equity holders of Pomare (Class 11) will be extinguished under the Plan and Class 11 is deemed to have rejected the Plan.

27.     Votes to accept and reject the Plan have been solicited from creditors holding Claims in Classes 3, 6, 8, and 9.  Such votes were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practices.

28.     As set forth in the Ballot Tabulation, Classes 6, 8, and 9 voted to accept the Plan.

**Treatment of Secured Claims**

29.     The holders of Allowed Secured Claims (Classes 4A, 4B, 5A, 5B, 5C, and 6) will receive at least as much as they would receive in a case under chapter 7 with respect to those Secured Claims.

9

## Unsecured Claims

30.     The holders of Allowed General Unsecured Claims against Pomare that are not subordinated (Classes 8 and 9) will receive substantially more than they would receive in a case under chapter 7, because if the assets of Pomare were liquidated outright, Pomare's Estate would not receive sufficient funds to pay the senior Classes of Claims and Administrative Claims in full, resulting in no distribution to Classes 8 and 9.  Classes 8 and 9 will receive at least 5% of their allowed claims under the Plan.  As a result, holders of Allowed Classes 8 and 9 Claims will receive more under the Plan than they would receive if Pomare's case were converted to a case under chapter 7.

31.     Claims in Class 10 will not receive any consideration under the Plan.  They would, however, also not receive any consideration if Pomare's case were converted to a case under chapter 7.

## Equity Interests

32.     Allowed Equity Interests in Class 11 will not receive any consideration under the Plan.  They would, however, also not receive any consideration if these cases were converted to a case under chapter 7.

33.     The Plan provides for the same treatment for each Claim or Interest in each respective Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying

10

section 1123(a)(4) of the Bankruptcy Code.

## Means of Implementation

34. The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation.

35. No party in interest, including the Committee, has filed any objection to the Plan.

36. Three million dollars ($3,000,000) in new capital by the conversion of the DIP Loan in the amount of $1,000,000 to equity and the infusion of an additional $2,000,000 as capital by Mr. Kang on the Effective Date of the Plan will provide Pomare with sufficient ~~recourse~~ *resources* to pay all costs of emergence and to provide sufficient working capital in the future. *RJK*

37. The Debtor has demonstrated adequate assurance of future performance with respect to the assumed agreements and leases. No party to an executory contract has objected to the Plan or the assumption or assignment of any executory contract.

38. Pomare exercised sound and considered business judgment in the formulation of the Plan. Pomare has demonstrated sound business purpose and justification for the Plan, pursuant to Bankruptcy Code § 363(b).

39. All fees payable under section 1930 of title 28, United States

11

Code, as determined by the Bankruptcy Code, have been paid or will be paid pursuant to the Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

40.    Section 2.4 of the Plan was amended on the record at the Confirmation Hearing to provide that the Debtor shall pay to each holder of an Allowed Priority Tax Claim an amount equal to the amount of the Allowed Priority Tax Claim, plus interest from the Effective Date on the unpaid portion of such Allowed Priority Tax Claim (without penalty of any kind) to the extent and at the rate provided for in section 511 of the Bankruptcy Code and not at the rate of 3% per annum as originally provided in the Plan.

41.    Additionally, at the Confirmation Hearing, the Debtor and GE Commercial Finance Equipment ("GE Finance") confirmed their agreement regarding the Debtor's assumption of two GE Finance equipment leases as follows: (a) The Debtor shall assume GE Finance Lease No. 6158253-032 (three Toshiba E200L copiers) and GE Finance Lease No. 6158253-035 (Toshiba 603T copier); (b) The Debtor shall make cure payments on the two leases in the amounts of $426.53 and $1,448.14, respectively; and (c) GE Finance will release its administrative claims arising from the Debtor's rejection of certain other GE Finance leases.

## CONCLUSIONS OF LAW

12

42.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

43.     This Bankruptcy Court has jurisdiction over the Case pursuant to sections 157 and 1334 of title 28 of the United States Code.  Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and exclusive jurisdiction over all of the Debtor's assets.

## Confirmation Requirements

### Section 1129(a)(1)

44.     The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a) of the Bankruptcy Code.

(a)     The Plan properly places substantially similar claims in each class and designated such classes of claims, thereby satisfying sections 1122 and 1123(a)(1) of the Bankruptcy Code;

(b)     The Plan specifies the treatment of each Class that is not impaired, thereby satisfying section 1123(a)(2);

(c)     The Plan specifies the treatment of each Class that is

13

impaired, thereby satisfying section 1123(a)(3);

        (d)    The Plan provides for the same treatment for each claim or interest in a particular Class, unless the holder thereof agrees to a less favorable treatment, thereby satisfying section 1123(a)(4);

        (e)    The Plan and the Plan Supplement, including the adoption and implementation of all corporate actions necessary to implement the Plan and the execution of all documents and the implementation of all actions as required with respect to, and in accordance with the Plan provisions with respect to, the transactions contemplated by the Plan, thereby satisfying section 1123(a)(5);

        (f)    The Articles of Incorporation and By-Laws for Pomare include a provision prohibiting the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6);

        (g)    The Plan Proponents have disclosed the identity of directors and officers of Pomare that are, under the circumstances presented, consistent with the interests of creditors, equity holders, and public policy in accordance with section 1123(a)(7);

        (h)    The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code; and

        (i)    The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

U.S. Bankruptcy Court - Hawaii   #08-01448   Dkt # 603   Filed 10/02/09   Page 14 of 23

## Section 1129(a)(2)

45.    Pomare has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

(a)    The Debtor is a proper debtor under section 109 of the Bankruptcy Code;

(b)    The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)    The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

## Section 1129(a)(3)

46.    The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The good faith of the Debtor is evident from the facts and records of these cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and to effectuate a successful reorganization of the Debtor.

15

U.S. Bankruptcy Court - Hawaii   #08-01448   Dkt # 603   Filed  10/02/09   Page 15 of 23

47.    The injunctive provisions of the Plan and the Confirmation Order implement the Debtor's discharge.  Moreover, the Plan provides a mechanism for parties in these cases to seek relief from the injunctions.

### Section 1129(a)(4)

48.    Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Debtor's chapter 11 cases, or in connection with the Plan and incident to the Debtor's chapter 11 case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4).

### Section 1129(a)(5)

49.    The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code.  The identities of the individuals to serve on the Board of Directors of the Debtor and as officers of the Debtor as of the Effective Date were fully disclosed.  The appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtor and with public policy.  The identity of any insider that will be employed or retained by the Debtor after the Effective Date and the nature of such insider's compensation have also been fully disclosed.

### Section 1129(a)(6)

50.    The Plan does not provide for any changes in rates established

16

or approved by, or otherwise subject to, any governmental regulatory commission.

Thus, section 1129(a)(6) of the Bankruptcy code is not applicable.



17

## Section 1129(a)(7)

51.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses provided in the Disclosure Statement (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of a Claim or Interest in an impaired Class either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that holder would receive or retain if each Debtor was liquidated under chapter 7 of the Bankruptcy code on such date.

## Section 1129(a)(8)

52.     Classes 1, 2, 4A, 4B, 5A, 5B, 5C, and 7 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 6, 8, and 9 have voted to accept the Plan in accordance with sections 1126(e) and (d) of the Bankruptcy Code.

## Section 1129(a)(9)

53.     The treatment of Administrative Claims and Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

## Section 1129(a)(10)

54.     At least one Class of Claims against Pomare that is impaired under the Plan has accepted the Plan, determined without including any acceptance

18

of the Plan by an insider, thus satisfying the requirements of section 1129(a)(10) of

the Bankruptcy Code. Classes 6, 8, and 9 satisfy this requirement.

### Section 1129(a)(11)

55. The evidence proffered, adduced, or presented prior to and at

the Confirmation Hearing (a) is persuasive and credible, and (b) establishes that

confirmation of the Plan is not likely to be followed by the liquidation, or the need

for further financial reorganization, of the Debtor, thus satisfying the requirements

of section 1129(a)(11) of the Bankruptcy Code.

56. In order to satisfy Bankruptcy Code § 1129(a)(11), the Plan

Proponents need not prove that there is an absolute certainty that the conditions to

confirmation will be met. On the contrary, the Plan Proponents need only show that

the Plan offers a reasonable assurance of success. The Plan has the requisite level

of likelihood of success.

### Section 1129(a)(12)

57. All fees payable under section 1930 of title 28, United States

Code, as determined by the Bankruptcy Court, have been paid or will be paid

pursuant to the Plan, the terms of which are satisfactory to the Debtor and the

United States Trustee, thus satisfying the requirements of section 1129(a)(12) of the

Bankruptcy Code.

19

## Section 1129(a)(13)

58.    Bankruptcy Code § 1129(a)(13), which requires a plan to provide for the continuation of payment of all "retiree benefits" (as defined in Bankruptcy Code § 1114(a)), is inapplicable in the instant case as the Debtor does not have any such obligations.

## Section 1129(b)

59.    Based upon the evidence proffered, adduced, or presented by the Debtor and prior to and at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to each Rejecting Class, as required by section 1129(b)(1) of the Bankruptcy Code. Pursuant to Bankruptcy Code section 1129(b)(2)(B)(ii), no holders of Claims or Interests that are junior to those of Holders of Allowed Class 9 will receive or retain any distribution on account of junior interests under the Plan. In addition, the Plan does not provide for payment of more than the full amount of their respective Allowed Claims to any senior Class.

60.    Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of each Rejecting Class.

## Other Matters

61,    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. No

U.S. Bankruptcy Court - Hawaii   #08-01448   Dkt # 603   Filed 10/02/09   Page 20 of 23

governmental agency with standing to raise an objection pursuant to Bankruptcy Code § 1129(d) has, in fact, raised any such objection. This is strong evidence that the principal purpose of the Plan is not tax avoidance.

62.     All modifications to the Plan filed or announced prior to the conclusion of the Confirmation Hearing constitute technical changes and/or changes that have either been consented to by affected constituents or which do not require additional disclosure under Bankruptcy Code §§ 1125 or 1127(a), or re-solicitation of votes under Bankruptcy Code § 1126, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

63.     Based on the record before the Bankruptcy Court in this Case, the Debtor, the Committee, and their respective employees, officers, members, directors, agents, shareholders, and representatives, and any professional persons employed or formerly employed by any of them, have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii   #08-01448   Dkt # 603   Filed  10/02/09   Page 21 of 23

64.     Article VII of the Plan governing the assumption and rejection of executory contractors and unexpired leases satisfies the requirements of sections 365 and 1123(b)(2) of the Bankruptcy code, including the requirement that adequate assurance of future performance under the Assumed Executory Contracts will be provided.

65.     The release and injunction provisions contained in the Plan are fair and equitable, are given for valuable consideration, were properly noticed to holders of Claims and Interests and other interested parties in accordance with the requirements of due process and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and are in the best interests of the Debtor and its Chapter 11 Estate.

66.     Each term and provision of the Plan is valid and enforceable pursuant to its terms.

67.     The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

68.     The Debtor has satisfied the requirements of Bankruptcy Code § 365(b)(1) in connection with the assumption of the Assumed Executory Contracts.  Each of the Assumed Executory Contracts is an executory contract or an unexpired lease of the Debtor under Bankruptcy Code § 365.  All conditions under Bankruptcy code § 365 for the assumption by the Debtor of each Assumed

22

Executory Contract to which it is a party have been satisfied.

       69.    The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section X of the Plan and Bankruptcy Code § 1142. It is appropriate for this Court to retain jurisdiction to: (a) enforce and implement the terms and provisions of the Plan; (b) enforce the Assumed Executory Contracts; and (c) resolve any disputes arising under or related to the Plan.

       70.    Based on the foregoing findings and conclusions, it is appropriate for the Court to enter the Confirmation Order.

OCT 0 2 2009

_____
United States Bankruptcy Judge

23